81. Due to the misleading information contained in the letters as noted in paragraphs 75-77, Mr. Glover brought this new matter to the attention of Ms. Mazella of the GCMR on November 30, 2001 and December 4, 2001, respectfully. Mr. Glover received a response from the GCMR on December 11, 2001. Noted from Ms. Mazella's letter: 'I have received and reviewed your correspondence dated November 30, 2001 and December 4, 2001. As I previously stated, our enabling executive order prohibits our commission from conducting inquires into "statues or regulations governing abuse or neglect of persons with mental retardation." In addition, our mandate prohibits our commission from considering "matters for which there exist another mechanism instituted by law."

82. On December 6, 2001, Mr. Glover provided follow up correspondence to DPPC Deputy General Counsel Ms. Quinn relating to information as noted in paragraph 59 repeatedly requesting the DPPC perform a quality review of these investigations and appeal report pursuant to Mass Gen. Laws 19C-sections 3, 5, 9 and 11.

83. On December 17, 2001, Mr. Glover received a reply from Ms. Quinn denying his request. Noted from Ms. Quinn's letter: "'From the numerous reviews of the cases in which you were involved in some capacity, it has been determined, and affirmed on your appeal to the Department of Mental Retardation, that the provisions of each of these sections of the statute were complied with. The DPPC Executive Director reviewed the issues again upon receipt of your previous request for a Commissioner's Investigation, and concluded that these issues had been properly dealt with through the appeals process. No new information is presented in your correspondence to alter that view. Therefore, the Executive Director declines to further review this matter and has again determined that this matter is not appropriate for a Commissioner's Review. The Disabled Persons Protection believes that these cases have been thoroughly, fairly, and fully investigated and reviewed for appeal and reconsideration.'

84. On December 20, 2002, Mr. Glover sent via fax transmission, a reply to Ms. Quinn regarding the information noted in paragraph 83.

85. On January 25, 2002, Mr. Glover mailed information, via signature confirmation, to the Executive office of Massachusetts' Secretary of Health and Human Services, Mr. Robert Gittens. Included with this material was documentation indicating numerous descrepancies and mistaken conclusions surrounding these mishandled investigations and the appeal report conducted by the DMR. On January 28, 2002, a representative from this office, a 'J. Reynolds' received the information mailed by Mr. Glover.

86. Mr. Glover never received a response from the office of former Secretary Gittens regarding the information as noted in paragraph 85.

87. On January 29, 2002, Mr. Glover received a response from Massachusetts Senate Minority Leader Brian Lees regarding previous information provided to Senator Lees and House bill, entitled, 4644, "An Order Relative to Authorizing the Committee on Human Services and Elderly Affairs to Make an Investigation and Study of Certain Senate and House Documents Concerning Disability Services." Noted from Senator Lees' letter: 'I appreciate learning your thoughts on this significant legislation and I understand your frustration with the Investigation Unit of the Department of Mental Retardation.'

88. On January 31, 2002, Mr. Glover faxed documentation to Ms. Caroline Chang of the Office of Civil Rights (hereinafter referred to as OCR) at the United States Federal Department of Health and Human Services (hereinafter referred to as HHS) Region I office in Boston. A folder of additional information was mailed, via signature confirmation, to Ms. Chang on this same day as well.

89. On February 1, 2002, Ms. Kesha Edwards, a representative from the OCR, contacted Mr. Glover to discuss these matters. Mr. Glover and Ms. Edwards discussed the possibility of having the OCR/HHS explore these investigative practices carried out by the DMR in reference to following federal procedural guidelines involving abuse and mistreatment investigations since the DMR receives federal funding from HHS.

90. Mr. Glover informed Ms. Edwards that her office would receive additional material within the next few days. Furthermore, Mr. Glover informed this representative from the OCR that because of the way these investigations and appeal had been mishandled by employees of the DMR, legal violations had transpired.

91. On February 20, 2002, through the recommendation of both Senator Lees and the office of Senator Kennedy, Mr. Glover contacted the office of Massachusetts State Senator Stephen Brewer. Later that same night, Mr. Glover met with Mr. John Cournoyer (from Senator Brewer's office) in Belchertown, MA during 'town hours' allowed for constituents from the specific districts represented by Senator Brewer. Mr. Glover provided Mr. Cournoyer a packet of information, which indicated the DMR had mishandled these specific investigations and appeal report.

92. On February 27, 2002, Senator Brewer sent letters and documentation, on Mr. Glover's behalf, directly to Acting Governor Swift and DMR Commissioner Morrissey. Noted from Senator Brewer's letters: 'I would greatly appreciate if you would review the enclosed documentation at your convenience, and consider any options that Mr. Glover may have in this regard. I would also appreciate if you would contact Mr. Glover directly with any information that becomes available, and please send me a copy of any correspondence you may have with him in this regard.'

93. On March 14, 2002, DMR Commissioner Morrissey replied to Senator Brewer about the information in paragraph 91. Noted from Commissioner Morrissey's letter: 'Thank you for your letter on behalf of your constituent JT Glover. Please be assured that the materials you forwarded me will be given careful review. I have also included a letter to Mr. Glover from Deputy General Counsel Peter Morin, which I hope demonstrates that Mr. Glover's concerns have been fairly and fully considered.'

94. Mr. Glover never received a response from then Acting Governor Jane Swift regarding the information provided to Ms. Swift's office from Senator Brewer noted in paragraph 92.

95. On March 6, 2002, Mr. Glover received a letter from HHS Regional Manager of the OCR, Ms. Chang. Noted from her letter: 'You also raise concerns regarding the Massachusetts Department of Mental Retardation investigation of these allegations. This letter is to advise you that OCR is unable to assist you. Allegations of abuse are handled by HHS' Centers for Medicare and Medicaid Services. Therefore we have closed your complaint and referred it to the office listed below for possible handling' (Centers for Medicare and Medicaid).

96. On March 11, 2002, Mr. Glover provided a follow up letter, via facsimile transmission, to Senator Kennedy at his Washington DC office in reference to the information cited in paragraph 95.

97. On Thursday, June 13, 2002, Christian, a staff member from Senator Kennedy's constituent services, contacted Mr. Glover regarding this matter. Subsequently, on June 18, 2002, Mr. Glover provided a summation to this person about previous correspondences sent to Senator Kennedy's office. Christian followed up with Mr. Glover by leaving a message on his answering machine requesting that 'he contact Senator Kennedy's office with information about whom he contacted with HHS in Boston, what documents Mr. Glover had provided this office, and if he could fax these same documents to Senator Kennedy's office as well.' On June 20, 2002, Mr. Glover faxed this requested information to Senator Kennedy's office.

98. On June 20, 2002, Christian, from Senator Kennedy's office again contacted Mr. Glover. Noted are excerpts from this second message left by this staff member on Mr. Glover's answering machine: 'We feel we have a sufficient amount of information on your case, we're trying to see what best and most expedient way to handle your issue is…and we appreciate your diligence.'

99. On July 25, 2002, Senator Kennedy sent a letter to Mr. Glover indicating his office conducted a congressional inquiry into these matters with the Federal Department of HHS Region 1 office in Boston. Enclosed with the Senator's letter was correspondence dated July 15, 2002 written by Mr. Ronald Preston, former Associate Regional Administrator of the Centers for Medicare and Medicaid Services.

100. Noted is the following excerpt from Mr. Preston's letter: 'We will be happy to review any additional information in this case if it contains specific allegations regarding the maltreatment of any Medicaid recipients by DMR or its contractors or their misuse of federal funds. Furthermore, our sister agency, the Office of Civil Rights, has authority to investigate any allegation of discrimination on the basis of disability (and certain other factors) in programs and activities receiving federal financial assistance from the Department of Health and Human Services.'

101.    On October 17, 2002, Mr. Glover conferred with specific staff members from Senator Kennedy's constituent services. During this conference call, Mr. Glover learned that the office of HHS was choosing not to explore these systemic problems facing the Division of Investigations of the DMR and these matters didn't hold appropriate merit for further review by HHS.

102.    On October 23, 2002, Mr. Glover faxed letters directly to Mr. Preston, and Mr. Brian Cresta, Regional Representative of HHS requesting to learn, in more detail, why HHS felt that the DMR mishandling of these specific investigations didn't require further investigation. Mr. Glover never received a response from either Mr. Preston or Mr. Cresta regarding Mr. Glover's inquiries.

103.    On October 9, 2002, Senator Brewer sent a letter and enclosed documentation referring these matters to Attorney General Thomas Reilly. Noted from Senator Brewer's letter: ' I would appreciate if you would review the enclosed documentation at your earliest convenience, and please consider any options that may be available to Mr. Glover. In addition, I would also appreciate if you would contact Mr. Glover directly with any developments that may occur relative to this matter.'

104.    On October 29, 2002, Mr. Glover received a letter from Senator Brewer notifying him that the Senator's office received a reply from the Attorney Generals office which contained information similar to what is stated in paragraph 70.

105. On October 31, 2002, Mr. Glover sent an introductory statement regarding these matters to the office of candidate for Massachusetts Governor Mr. Mitt Romney. Mr. Glover's reasoning was because one of Mr. Romney's campaign issues was stressing the need to restructure aspects of Health and Human Service agencies operating in the Commonwealth.

106. On November 1, 2002, Mr. Glover received a reply from Candidate Romney. Noted from this letter: 'Thank you for your letter and the information you sent. As you mentioned, we are in the final days of the campaign, and thus are quite focused on victory. If I am fortunate enough to become Governor, I look forward to researching all feasible ways of improving our state's Health and Human Services agencies.'

107. In January 2003, Mr. Preston, the individual noted in paragraphs 99-102, was appointed by then Governor-elect Romney to serve as his Secretary of the Executive Office of Health and Human Services for the Commonwealth of Massachusetts.

108. Since Mr. Preston's new duties entailed overseeing the DMR; on January 8, 2003, Mr. Glover provided a cover letter and packet of documented information, via delivery confirmation, to Mr. Preston regarding the DMR Division of Investigations/Appeal office mishandling these specific investigations and the appeal report pursuant to MGL 19C and 115 CMR 9.00.

109. On February 25, 2003, Mr. Kevin Hall, New England Director for the Citizens Commission on Human Rights submitted a one-page report to Attorney Ralph Calderaro of the DPPC citing evidence that the DMR mishandled the investigation by Mr. Comerford and the appeal report by Ms. Nicholson (note enclosure #1).

110. Content from the cover letter Mr. Hall wrote Mr. Glover when providing him a copy of his report submitted to the DPPC: 'Thank you for your courage and persistence in trying to protect the clients of the Department of Mental Retardation from internal abuse.'

111. On April 9, 2003, Mr. Glover provided faxed correspondences to DMR Springfield and Boston, and included Mr. Hall's letter and report as noted in paragraphs 109-110. This material was also forwarded to the Office of the Attorney General and the Office of Governor Mitt Romney on this day as well.

112. On May 16, 2003, Mr. Glover received a reply from Attorney Calderaro of the DPPC in reference to information contained in paragraph 105. Noted from Attorney Calderaro's letter: 'I am in receipt of both the correspondences from Mr. Hall and yourself regarding your concerns involving DPPC cases #32022, 32045, 32099 and 32100. I have been and am continuing to review the concerns enunciated in both of these letters. Because of the variety of demands on my time, admittedly my progress has been slower that I had hoped. However, I did want you to know that your expressed concerns are not being ignored and that as soon as I have completed my review of these matters I will notify both you and Mr. Hall of any conclusions that I reach.'

113. Mr. Glover sent a reply to Attorney Calderaro, via fax transmission, on May 23, 2003.

114. On May 23, 2003, Mr. Glover received additional correspondence from Attorney Morin of the DMR in reference the information he faxed to DMR Boston on April 9, 2003 as noted in paragraph 111.

115. Noted from Attorney Morin's letter: 'The Department of Mental Retardation devoted significant resources to your appeal. It is the Department's position that your appeal was thoroughly and fairly considered. All inquiries brought on your behalf by the offices of former Governor Swift, the Governor's Commission on Mental Retardation and Senator Kennedy have been responded to in an open and cooperative manner. Upon review of the materials provided them each of the aforementioned offices have indicated their satisfaction with the Department's actions.'

116. Given the additional misleading information contained in the letter cited in paragraph 113, Mr. Glover sent a reply, via fax transmission, directly to Mr. Morin on May 27, 2003.

117. Several conversations were held between representatives from the offices cited in paragraph 115 and Mr. Glover. During these phone conferences, no one ever indicated to Mr. Glover 'their satisfaction with the Department's actions' regarding the mishandling of these investigations.

118.   On October 14, 2003, Mr. Glover received a response from Attorney Kristen Reasoner Apgar, General Counsel of the Massachusetts Executive Office of Health and Human Services dated October 2, 2003 in reference to paragraph 8 in the introduction of this amended complaint.

Case 3:03-cv-11633-MAP    Document 9-2    Filed 10/17/2003    Page 12 of 17

118.   On October 14, 2003, Mr. Glover received a response from Attorney Kristen Reasoner Apgar, General Counsel of the Massachusetts Executive Office of Health and Human Services dated October 2, 2003 in reference to paragraph 8 in the introduction of this amended complaint.

## III. Closing Statement

1.  Since I am representing myself on a pro-se basis, I assure the US District Court that I will continue researching all of the necessary information allowing me to proceed forward with these matters. More importantly, because of these circumstances, and other mishandled investigations conducted by the DMR in the last ten years, I firmly believe this agency's Division of Investigations is rifled with numerous flaws requiring further inquiry. It is my hope necessary improvements may be instituted in the investigative practices being carried out by the DMR.

## III. Closing Statement

1.

## IV. Causes of Action:

### Count I. 42 USC Section 1983: Civil Action for the deprivation of Rights

1.  The acts or omissions of specific individuals affiliated with the Department of Mental Retardation initiated on April 27, 2000, (which these acts and omissions were first discovered on October 6, 2000 and thereafter) were intentional.

2.  Specific individuals affiliated with the Department of Mental Retardation acted under the color of state law.

3.  The actions or omissions of specific individuals affiliated with the Department of Mental Retardation were the [proximate] [legal] cause of the deprivation of the plaintiff's, Mr. JT Glover III, rights protected by the Constitution [or laws] of the United States.

*Citizens Commission on Human Rights®*
*1112 Boylston Street, PMB 213*
*Boston, MA 02215*
*(617) 927-CCHR*

JT Glover III
46 Quincy Street, #5
North Adams, MA 01247

February 25, 2003

Dear Mr Glover

Attached is my report to Disabled Persons Protection Commission regarding your report of abuse to a DMR client at the Berkshire Family And Individual Resources, Inc.

Thank you for your courage and persistence in trying to protect the clients of the Department of Mental Retardation from internal abuse.

Please feel free to use this letter and the statement to DPPC as you see fit

Sincerely

Kevin Hall
New England Director

CCHR was established in 1969 by the Church of Scientology to investigate and expose psychiatric violations of human rights

*Citizens Commission on Human Rights®*

1112 Boylston Street, P/MB 213
Boston, MA 02215
(617) 927-CCHR

Attorney Ralph Calderaro
Disabled Persons Protection Commission
59 Ross Way
Quincy, MA 02169

February 25, 2003

Dear Attorney Calderaro,

Attached is a case I believe you are aware of that shows a necessity for investigations to be done fully outside the realm of the Department of Mental Retardation by an agency such as yours.

The case is one where a former employee of a DMR contractor who reported abuse, has documentation that abuse of a client occurred and DMR dismissed this case as unsubstantiated despite evidence such as incident reports occurring on the shift of the abusive staff member, medical records showing injury to the DMR client and corroborating testimony.

This evidence is all attached in the DMR Senior Appeals Officer, Pamela Nicholson, report, despite her conclusions and recommendations statement that, "The weight of evidence does not support a conclusion that Staffperson C abused or mistreated the individual's in his care."

The following are attached:
1 Cover page and conclusions and recommendations page 29,
2 Page 24 and 25 incident reports
3 Page 25 last paragraph and page 26, first two paragraphs stating a pattern of suspicious incident reports and that they weren't followed up upon by the house manager.
4 Page 28, 2nd paragraph states that "the injuries could be traced to a time when the individual was in the care of Staffperson C and that Staffperson C had failed to properly document the circumstances of each injury
5 Page 14 (last paragraph) and page 15 (first two paragraphs) give corroborating statements of abuse and intimidation of patients against Staffperson C by former Staffperson M
6 Page 20 (bullets section) states that DMR Investigator Harry Comerford reported that
    a that Staffperson M indicated that he did not witness Staffperson C mistreat the clients (this statement is proven false by pages 14 and 15), and
    b that there was an absence of a pattern of injuries or incidents when Staffperson C worked with Individual S in DMR Incident Reports (this statement is proven false by pages 24, 25, 26 and 28).
7 Page 7 and 8 allegations of abuse by reporter JT Glover against Staffperson C (Steve Conlin) against Individual S, a client at Berkshire Family And Individual Resources, Inc. (BFAIR).

From what I understand, Glover was fired. Conlin was employed at the BFAIR residential home another year. The whistleblower is fired, the abuser kept on and the case is kept quiet which protects the PR of DMR and its private contractor while the client is kept in an abusive environment.

Sincerely,

Kevin Hall
New England Director

## Certificate of Service

      I, JT Glover III, herby certify that on October 15, 2003, I served a copy of the foregoing **Amended complaint** by First-Class Mail, postage prepaid, upon:

Assistant Attorney General Timothy M. Jones
Office of the Attorney General
Western Massachusetts Division
1350 Main Street
Springfield, MA 01103-1629

                                                       _____
                                                          JT Glover III