United States District Court
District of Massachusetts
Western Division

CIVIL ACTION NO: 03CV11633 MAP
NO: 03CV30213 KPN

| | |
|---|---|
| JT Glover III, Pro se | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| Massachusetts Department of | ) |
| Mental Retardation, et al | ) |
| | ) |
| | ) |
| Defendants | ) |
| | ) |
| | ) |

## Plaintiff's arguments submitted for the hearing on pending motions for Civil Action No: 03CV11633 MAP and No: 03CV30213 KPN: April 20, 2004

The following memorandum will be submitted for the hearing held on Tuesday,

April 20, 2004 regarding the plaintiff's and the defendants' pending motions in the

above-mentioned civil actions that include:

1. Defendants' request for Motion to Dismiss/Summary Judgment.
2. Plaintiff's Motion in Opposition to this motion.
3. Plaintiff's Motion requesting sixty days to file a Second Amended Complaint.
4. Defendants' Opposition to Plaintiff's Motion to File a Second Amended Complaint
5. Defendants' Motion to Strike Documents and Information Submitted with Plaintiff's Opposition to Defendants' Motion to Dismiss.

1

1.    Notice of pleading: Considering the allegations cited in both the plaintiff's amended complaint as well as his opposing motion to summary judgment, a cause of action has been asserted pursuant to 42 USC Section 1983. Since these alleged deprivations were initially discovered on October 6, 2000 and occurred up until on or about May 23, 2003, each of the defendants own conduct should be individually scrutinized when considering these motions that have been put forth before this court.

2.    On an accumulating basis, the defendants contributed to the mishandling of these investigations and appeal report conducted by the Department of Mental Retardation (hereinafter referred to as the 'Department') or relied on information manipulated by other employees affiliated with the Department. Furthermore, specific defendants failed to rectify this misinformation after it was brought to their attention by the plaintiff on numerous occasions (amended complaint, factual allegations, p. 52, 54, 56, 58, 60, 75, 76, 80, 111, 115, 116).

3.    If deemed necessary, it is the plaintiff's wish to obtain permission from this court allowing him to resubmit a second amended complaint. After reviewing this new information, it should indicate that the plaintiff was "1) deprived of a federally protected constitutional right and 2) the person who deprived him of that right was acting under color of state law. See Gomez v. Toledo, 446 U.S. 635, 639 (1980)." Additionally, courts usually do not to rule on a summary judgment motion without conducting some limited discovery. The scope of the record is inadequate and not fully developed enough at this point in time to appropriately rule on a motion to dismiss or alternately, summary judgment.

4.    In the plaintiff's possession, is documented evidence, admissible under Article

VIII, rule 803 and Article IX, rule 902, pursuant to the Federal Rules of Evidence,

clearly corroborating and expanding on these aforementioned allegations.

Rule 803 (6) Records of regularly conducted activity:

"A memorandum, report, record, or data compilation, in any form, of the acts,
events, conditions, opinions, or diagnoses, made at or near the time by, or from
information transmitted by, a person with knowledge, if kept in the course of a
regularly conducted business activity, and if it was the regular practice of that
business activity to make the memorandum, report, record or data compilation, all
as shown by the testimony of the custodian or other qualified witnesses, or by
certification that complies with Rule 902(11), Rule 902(12)…"

Rule 902 Self-authentication: Extrinsic evidence of authenticity as a condition
precedent to admissibility is not required with respect to the following:

>           Domestic public documents under seal.
>           Domestic public documents not under seal.
>           Certified copies of public records
>           Official publications
>           Newspapers and periodicals

5.    Additionally, "documents sufficiently referred to in the complaint can be

properly considered on a motion to dismiss" See, e.g., Watterson v. Page, 987, F.

2d 1, 3 (1st Cir. 1993). The documents cited in the plaintiff's amended complaint

have important factual relevance relating to the involvement of the defendants and

their individual motivations as well. Because of the factual allegations identified

in both the plaintiff's amended complaint and opposing motion, there are genuine

issues of material facts remaining in dispute regarding the defendant's adverse

employment actions taken against the plaintiff.

6.    Please note this excerpt from a magistrate judge's opinion of a civil action

recently filed in the US District Court of Puerto Rico. The plaintiffs in this

particular case sought relief for First Amendment violations. Not surprisingly, the

defendants responded to these allegations by asserting qualified immunity

(Rivera-Jimenez, et al v. Fuentes-Agostini, et al. 1st Cir. 2004).

> [h]ere, as to both plaintiffs, there are fact issues regarding the motives of the
> defendants. Indeed, a factor to consider in the case at bar is the motive for the
> alleged adverse employment action taken against the plaintiffs....Further, the
> evidence relating to the defendants' motivation in the action taken against the
> plaintiffs is a factual manner...Accordingly, because there are factual issues as to
> an essential element of plaintiffs' claims (i.e., the motivation of defendants in the
> actions taken against the plaintiffs) defendants' motions for summary judgment
> on the basis of qualified immunity must be denied.

Furthermore: as noted in Mihos v. Swift 358, F, 3d (1st Cir. 2004):

> Because Swift's "motivation in effecting the discharge is an essential element of
> [Mihos's] constitutional claim," the motivations for Swift's actions are crucial to
> this case. Feliciano-Angulo v. Rivera Cruz, 858 F. 2d 40, 45 (1st Cir. 1988). As
> we explained in Part C.1.b. infra, the motivation element of the constitutional
> claim does not disappear at the qualified immunity stage. Acevedo-Garcia v.
> Vera-Monroig, 204 F. 3d 1, 12 (1st Cir. 2000) (affirming "the rightness of the
> district court's consideration of motivation in rejecting the qualified immunity
> defense...").

> To comport with constitutional and other fundamental principles, [Swift] says
> qualified immunity should be recognized where a public official is required to
> exercise her judgment and form an opinion as to a balance between competing
> interests, so long as the official does not knowingly or recklessly rely upon
> irrelevant considerations or false information or ignore contrary information.

> Mihos II, 235 F. Supp 2d at 57.

7.   Additionally, there are a number of mischaracterizations contained

throughout the 'Background and Summary of Alleged Claim' and 'Argument'

sections in the defendants' answer to the plaintiff's amended complaint.

Noted on page 2 in the defendants' answer:

"Immediately after the confrontation, Conlon lodged a complaint with the
Massachusetts Disabled Persons Protection ("DPPC") regarding the confrontation
and its impact on residents of the home. An investigation ensued. Glover
responded to this investigation of his conduct by lodging his own complaint,
approximately one week after his termination, on July 18-20, 1999."

- The plaintiff, Glover, had already initiated reporting these acts of

   abuse and mistreatment occurring in the group home where he and Mr.

   Conlon were employed to both Berkshire Family And Individual

   Resources, Inc and the Disabled Persons Protection Commission days

   before becoming aware that a report-filled with much deceit-had been

   filed against him.

Noted on page 4 in the defendants' answer:

"DMR followed up on Glover's concerns, and on November 16, 1999, DMR
investigators Paymen and Steven Williams met with Glover. They collected
additional information from Glover and the witnesses to whom he referred them.
Further, on November 22, 1999, another DMR investigator, defendant Harry T,
Comerford, was assigned to conduct a follow up investigation. Comerford
followed up initially by meeting with Glover in the presence of another DMR
employee, Ms. Kirk. Glover expressed his concerns with the Paymen /Williams's
investigation and provided additional information."

- The plaintiff, Glover, never met with defendant Comerford in the presence of DMR supervisor Ms. Kirk. In fact, cell phone conversations were held separately with both of these individuals on November 29, 30, 1999, respectfully, It was not until sometime in December 1999, when the plaintiff met with Ms. Kirk (without the presence of Mr. Comerford) at the Department's Springfield office. During this brief meeting, Glover provided Ms. Kirk with additional information regarding these matters (amended complaint, factual allegations, paragraphs 38, 42).

Noted on page 8 in the defendants answer:

> 'Glover limits his amended complaint to the acts or omissions of the named defendants "initiated on April 27, 2000," which Glover learned about on October 6, 2000.'

- Given the accumulated factual documentation noted in the plaintiff's amended complaint, Glover does not limit these questionable circumstances solely on the events in which he discovered on October 6, 2000. There are, in fact, repeated examples of specific defendants (and other individuals as well) denying the plaintiff's right to petition a redress of these grievances, as well as engaging in discriminatory acts against Glover's freedom of speech and expression activities on specific occasions well after October 6, 2000.

Noted on page 10 in the defendants answer:

> 'First, nowhere in the amended complaint has he alleged how each of the individual defendants interfered with his right to petition. Indeed, the allegations indicate the defendants were cooperative and responsive. This does not support a claim for interference of the right to petition'. "Nothing in the First Amendment or in th[e] Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues" <u>Minnesota State Bd. For Community Colleges v. Knight</u>, 465 U.S. 271, 283, 285 (1984).

- Not only did the plaintiff make longstanding efforts to redress these matters, but Massachusetts State Senator Stephan Brewer, on Glover's behalf, attempted to petition defendant Morrissey and Attorney General Tom Reilly on February 27, 2002 and October 9, 2002, respectfully, to review this matter (amended complaint, factual allegations, paragraphs 91-93, 103-104).

Noted on page 15 in the defendants' answer:

"Glover has not alleged any facts which would overcome the defense of qualified immunity. Assuming his allegations to be true, they amount to nothing more than questioning the manner in which the Commonwealth defendants exercised their discretion while performing their official functions. He does not claim that they did not comply with mandatory statutory or regulatory obligations. Rather he merely disagrees with the way in which they exercised their discretion. There are no allegations that indicate anything other than the objective reasonableness of the Commonwealth defendants' discretionary conduct.

- As noted in paragraph 60 in the plaintiff's amended complaint, Glover provided specific defendants, via fax transmission, with a nineteen page document on July 20, 2001. In this documentation, it clearly cites some of the procedural errors made by Department's Division of Investigations and Appeals Unit pursuant to DMR Regulations 115 CMR 9.00. Even though the plaintiff's amended complaint was verified, paragraph 60 was not addressed in the defendants' answer. Additionally, some of these procedure errors were previously brought to the attention of the Office of the Attorney General, through documented correspondence, mailed to this office on August 29, 2001 (amended complaint, factual allegations, paragraphs 68-70).

8. Furthermore, some of these mischaracterizations were brought to the attention of Assistant Attorney General Timothy Jones, via fax transmission, on December 22, 1999. That very same day, General Counsel Ralph Calderaro of the Disabled Persons Protection Commission sent a reply to the plaintiff regarding the report submitted to the Commission ten months beforehand on February 25, 2003 by Mr. Kevin Hall of the Citizens Commission on Human Rights. Mr. Hall's report provides specific factual information that clearly indicates these investigations and appeal conducted by the Department were mishandled (amended complaint, enclosure).

9.      The defendants' answer to the plaintiff's amended complaint and

Attorney Calderaro's letter is attempting to 'paper over the facts' regarding

the true nature of these circumstances. Because of the documented evidence

already presented to the Department, the DPPC, and finally, the Office of

the Attorney General, there seems to be an unlimited capacity for denial

taken by these offices relating to the true nature of these circumstances.

10.     The plaintiff wishes for this court to note:

> "In any event, the standard for showing an adverse employment action is
> lower in the First Amendment retaliation context than it is in other
> contexts (such as Title VII), see Power v. Summers, 266 F. 3d 815, 820-
> 821 (7th Cir. 2000), and the Supreme Court has indicated that even
> relatively minor events might give rise to liability. See Rutan v.
> Republican Party of Ill., 497 U.S. 62, 75-76 & n.8 (1990); see also
> Coszalter v. City of Salem, 320 F.3d 968, 974-77 (9th Cir. 2003) ("To
> constitute an adverse employment action, a government act of retaliation
> need not be severe and it need not be of a certain kind").

11.     A plaintiff's complaint may be dismissed for failing to state a claim "only

if it is clear that no relief could be granted under any set of facts that could be

proved consistent with the allegations." Torres-Viera v. Laboy-Alvarado, 311

F.3d 105, 108 (1st Cir. 2002) (quoting Swierkiewicz v. Sorema N.A., 534 U.S.

506, 514 (2002). Considering all of these factual allegations, qualified immunity

should not allow the defendants to avoid accountability because of their

individual participation in the mishandling of these investigations and their

repeated resistance towards the plaintiff's long-term effort to redress these

concerns.

12.    In closing, since the plaintiff is acting on his own behalf through pro-se representation, he remains hopeful that some leeway may be allowed in the manner in which these allegations and opposing arguments have been presented thus far. It is simply his wish for this court to determine these matters warrant further consideration by allowing limited discovery, or alternately, granting a sixty day time frame to resubmit a second amended complaint consisting of additional factual underpinnings expanding on these aforementioned alleged constitutional violations and the numerous errors (regarding established investigative procedures) that were not followed pursuant to DMR Regulations, 115 CMR 9.00.

> The plaintiff,
> Submitted on behalf of himself,
>
> By: _____
> JT Glover III, Pro-Se
> 46 Quincy Street #5
> North Adams, MA 01247

## CERTIFICATE OF SERVICE

I, JT Glover III, herby certify that on April 20, 2004, I provided a copy of the foregoing **Oral Arguments supporting the plaintiffs opposing motion to the defendants motion to dismiss, or alternately, summary judgment**, by hand-delivery to the following parties of record:

Assistant Attorney General Timothy Jones
Office of Attorney General-Western Massachusetts Division
1350 Main Street
Springfield, MA 01103